UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

E.R. SMITH ASSOCIATES, INC.

Plaintiff,

Civil Action No. 05-CV-45-T

v.

THE COLONIAL PRESS, INC.

Defendant.

**DEFENDANT'S MOTION TO DISMISS PURSUANT TO RULE 12(b)(2) FOR LACK OF PERSONAL JURISDICTION**

The defendant, The Colonial Press, Inc. ("Colonial Press"), hereby moves this Court to dismiss the complaint for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

In support of this motion, Colonial Press relies upon the accompanying Memorandum of Law, which includes the Affidavit of Thomas A. Visty in Support of Defendant's Motion to Dismiss for Lack of Personal Jurisdiction.

**THE COLONIAL PRESS, INC.**
By its attorney,

Barbara S. Cohen

Barbara S. Cohen (2848)
GOLDENBERG & MURI LLP
10 Weybosset Street
Providence, RI 02903
Tel: (401) 421-7300
Fax: (401) 421-7352

8

**CERTIFICATE OF SERVICE**

I hereby certify that on the 2nd day of March, 2005, a copy of the within Motion was forwarded by first class mail, postage prepaid, to:

George A. Comolli, Esq.
Comolli & LaMountain, Ltd.
15 Franklin Street
Westerly, RI 02891

W. Mark Russo, Esq.
Christopher M. Mulhearn, Esq.
Ferrucci Russo P.C.
55 Pine Street
Providence, RI 02903

Jennifer Gagnon

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

E.R. SMITH ASSOCIATES, INC.

Plaintiff,

v.

THE COLONIAL PRESS, INC.

Defendant

Civil Action No. 05-CV-45-T

**DEFENDANT'S MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(b)(2)**
**FOR LACK OF PERSONAL JURISDICTION**

Pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the defendant, The Colonial Press, Inc. ("Colonial Press"), moves this Court to dismiss the complaint for lack of personal jurisdiction. Colonial Press does not have sufficient minimum contacts with Rhode Island to satisfy the requirements of Rhode Island's long-arm statute and the United States Constitution. Moreover, the exercise of personal jurisdiction over Colonial Press in this case would offend traditional notions of fair play and substantial justice and, therefore, would be unconstitutional.

## I. FACTS and TRAVEL OF THE CASE

On or about January 20, 2005, the plaintiff, E.R. Smith Associates, Inc. ("Smith"), filed suit in the Rhode Island Superior Court, Washington County, against Colonial Press alleging that Smith was owed $82,500 in connection with the installation of a certain press in Colonial Press's plant in La Vista, Nebraska.

Smith is a Rhode Island corporation with a principal place of business in Rhode Island. Complaint ¶1. Smith has more than eighty employees and routinely handles engineering projects for manufacturers and printers around the world. See http://www.ersmith.com/company.htm (Feb. 28, 2005) (a copy of which is attached hereto and marked "Exhibit A").

Among other things, the Complaint alleges:

Colonial Press is a Nebraska corporation with offices in Nebraska. Complaint ¶2.

In June 2004, Smith entered into a contract for the sale of a press located in England. Complaint ¶¶5, 6.

The contract for the sale of the press provided for an opportunity to inspect the press in England. Complaint ¶5.

Smith entered into a separate agreement to install the press, including removing, insuring, containerizing and shipping the press to Nebraska for installation. Complaint ¶7; Complaint Ex. B.

The installation agreement contemplated a five week installation period in Nebraska. Complaint Ex. B.

Colonial Press is operating the press at Colonial's plant in Nebraska "in accordance with contracts and understandings entered into between the parties." Complaint ¶12.

Although the Complaint alleges jurisdiction based on R.I. Gen. Laws §9-5-33, Complaint ¶3, the Complaint does not allege any factual basis for the exercise of personal jurisdiction over Colonial Press in Rhode Island. In fact, there is no basis upon which this Court may properly exercise jurisdiction over Colonial Press.

Colonial Press, a commercial printer and lithographer, is a Nebraska corporation, having a principal place of business in La Vista, Nebraska, a mailing address in Omaha, Nebraska and an office in Lincoln, Nebraska. Affidavit of Thomas A. Visty ("Visty Aff.") ¶¶5, 6, 7. (The original affidavit is attached hereto and marked "Exhibit B"). Virtually all of Colonial Press's customers are located in Nebraska or Colorado. Visty Aff. ¶8. None are located in Rhode Island. Visty Aff. ¶8.

Colonial Press has never been incorporated, licensed or qualified to do business in Rhode Island, and Colonial Press has never conducted business in Rhode Island. Visty Aff. ¶¶12, 14. Colonial Press has never appointed an agent for service of process in Rhode Island. Visty Aff. ¶13. Colonial Press has never owned, leased or possessed any interest in any assets in Rhode Island. Visty Aff. ¶15. Colonial Press has never maintained an office in Rhode Island. Visty Aff. ¶16.

Colonial Press has never maintained a telephone listing, mailing address or bank account in Rhode Island. Visty Aff. ¶17. Colonial Press has never had any employees or agents based or residing in Rhode Island. Visty Aff. ¶18. No contract to which Colonial Press has been a party has provided for the application of Rhode Island law. Visty Aff. ¶19. Colonial Press has never engaged in any advertising in Rhode Island or in any advertising calculated to reach Rhode Island. Visty Aff. ¶20.

Colonial Press has never sold any products in Rhode Island, and has never transported any products in or to Rhode Island. Visty Aff. ¶21. Colonial Press has never performed any services in Rhode Island. Visty Aff. ¶22. Colonial Press has never derived any revenue from the sale of goods or services, or from any other activity, in

Rhode Island. Visty Aff. ¶23. Colonial Press has never been required to pay, and has never paid, any taxes in Rhode Island. Visty Aff. ¶24.

Colonial Press does business with a used equipment dealer located in California. Visty Aff. ¶26. The dealer was aware of a press that was available in New Jersey, and recommended Smith to Colonial Press for the inspection of that press. Visty Aff. ¶27. Smith performed the inspection in October 2003 in New Jersey and, based on the results of the inspection, Colonial Press did not purchase the equipment. Visty Aff. ¶28. Colonial Press had not had contact with Smith previously. Visty Aff. ¶29.

In or about May 2004, Smith solicited Colonial Press with respect to a Harris M-110B web offset press ("the Harris press") that was available for purchase in Leeds, England. Visty Aff. ¶31. In May 2004, Smith sent a letter to Colonial Press, in Nebraska, regarding the Harris press. Visty Aff. ¶32. In June 2004, Smith sent quotes to Colonial Press, in Nebraska, regarding the Harris press. Visty Aff. ¶33. Approximately one week later, a representative of Smith and a representative of Colonial Press viewed the Harris press in England. Visty Aff. ¶34. Also, in June 2004, Smith sent Colonial Press a quotation for installing the Harris press in Colonial Press's plant in La Vista, Nebraska. Visty Aff. ¶36.

The Harris press was shipped from England to La Vista, Nebraska. Visty Aff. ¶39. Smith failed to perform the installation as promised. Although one or two representatives of Smith came to Colonial Press's facility in Nebraska, Smith sub-contracted the installation services to a North Carolina company. Visty Aff. ¶40. At times, over a period exceeding four and a half months, two to five employees of the North Carolina company attempted to install the Harris press in Colonial Press's plant.

Visty Aff. ¶40. The installation efforts in Nebraska were deficient and untimely, and did not accord with Smith's quotation. To date, the Harris press is not fully operational. Visty Aff. ¶40. Smith and Colonial Press reached an agreement, in Nebraska, resolving Smith's deficient services. Visty Aff. ¶¶41, 42.

Colonial Press received, in Nebraska, a few telephone calls and faxes from Smith and, in response, made a few telephone calls to Smith. Visty Aff. ¶43. However, none of the services contemplated or actually performed by Smith were performed in Rhode Island. Visty Aff. ¶43. All of the meetings between Smith and Colonial Press, except for the meeting in England, took place in Nebraska. Visty Aff. ¶43. No officer, employee or agent of Colonial Press has ever traveled to Rhode Island in connection with the activities alleged in the Complaint, or for any other reason. Visty Aff. ¶44.

Colonial Press has never purposefully engaged in activities in or directed towards Rhode Island. Visty Aff. ¶45. Colonial Press never contemplated that its actions would subject it to suit in Rhode Island. Visty Aff. ¶46. Colonial Press has never consented to the exercise of jurisdiction over it by courts in Rhode Island. Visty Aff. ¶47. All of Colonial Press's witnesses and records respecting this matter, as well as the Harris press, are located in Nebraska. Visty Aff. ¶48.

Colonial Press was served with copies of the Summons and Complaint on January 26, 2005 in La Vista, Nebraska. On February 4, 2005, Colonial Press removed the lawsuit to this Court. Colonial Press now moves the Court to dismiss the action because this Court may not properly exercise personal jurisdiction over Colonial Press.

## II. ARGUMENT

### A. Standard Of Review

To withstand a motion to dismiss for lack of in personam jurisdiction, "the plaintiff bears the burden of proving through credible evidence that the claim satisfies both the state's long-arm statute and constitutional due process." Colibri Corp. v. Curly & Smooth Handels GmbH, No. 03-523T, 2004 U.S. Dist. LEXIS 26711, at *11 (D.R.I. July 9, 2004) (Report and Recommendation of United States Magistrate Judge David L. Martin, recommending that motion to dismiss be granted, accepted by Court (Chief Judge Torres) by Order dated Jan. 21, 2005) (footnote omitted). To meet this burden, "the plaintiff cannot rest upon mere averments, but must adduce competent evidence of specific facts." Colibri, No. 03-523T, 2004 U.S. Dist. LEXIS 26711, at *11.

Rhode Island's long-arm statute provides, in pertinent part:

> Every foreign corporation . . . that shall have the necessary minimum contacts with the state of Rhode Island, shall be subject to the jurisdiction of the state of Rhode Island, and the courts of this state shall hold such foreign corporations . . . amenable to suit in Rhode Island in every case not contrary to the provisions of the constitution or laws of the United States.

R.I. Gen. Laws § 9-5-33(a) (emphasis added). This statute extends to the limit permitted by the United States Constitution. CVS Corp. v. Taubman Ctrs., Inc., 225 F. Supp.2d 120, 123 (D.R.I. 2002); Morel v. Estate of Davidson, 148 F. Supp.2d 161, 166 (D.R.I. 2001).

To satisfy the requirements of due process, a nonresident defendant must have certain minimum contacts with the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Northeastern Land Servs., Ltd. v. Schulke, 988 F. Supp 54, 57 (D.R.I. 1997) (quoting International Shoe Co.

v. Washington, 326 U.S. 310, 316 (1945)).

"There are two types of personal jurisdiction: general and specific." Colibri, No. 03-523T, 2004 U.S. Dist. LEXIS 26711, at *12 (citing United Elec. Workers v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088 (1st Cir. 1992)). "When a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum, the State [is] said to be exercising 'general jurisdiction' over the defendant." Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 414 n.9 (1984). However, "when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum, the State is exercising 'specific jurisdiction' over the defendant." Id. at n.8.

**B. Colonial Press Does Not Have The Necessary Minimum Contacts With Rhode Island To Subject It To Suit In This Court**

Smith's Complaint baldly avers that "[j]urisdiction is vested in this Court pursuant to R.I. General Laws Section 9-5-33." Complaint ¶3. However, the Complaint neither alleges any facts to support this allegation, nor specifies whether Smith claims the Court may exercise general jurisdiction or specific jurisdiction over Colonial Press.

Moreover, Colonial Press simply does not have the necessary minimum contacts with Rhode Island to permit this Court to exercise personal jurisdiction over it. Because Smith cannot meet its burden of proving that the requirements of Rhode Island's long-arm statute and constitutional due process are satisfied, the Complaint must be dismissed pursuant to Rule 12(b)(2).

**1. This Court May Not Exercise General Jurisdiction Over Colonial Press**

General jurisdiction may be invoked "where the defendant's instate activities are so substantial and of such a nature that they will justify a lawsuit against [it] on causes of

action distinct from those activities." Colibri, No. 03-523T, 2004 U.S. Dist. LEXIS 26711, at *13 (internal quotation marks and citations omitted). "The defendant's in-state activities must be both continuous and systematic." Id. (internal quotation marks and citations omitted). This requirement may be satisfied "when the defendant's forum contacts are extensive and pervasive." Id. (internal quotation marks and citations omitted).

In this case, there is a complete absence of in-state activities on the part of Colonial Press. Colonial Press has no substantial, continuous, systematic, pervasive or extensive contacts with Rhode Island.

Colonial Press is a Nebraska corporation with a plant, mailing address and office only in Nebraska. None of Colonial Press's customers are located in Rhode Island. Colonial Press has no agent for service of process in Rhode Island, and has never been licensed or qualified to do business in Rhode Island. Colonial Press has never owned, leased or possessed any assets in Rhode Island. Colonial Press has never had any office in this state, or any telephone listing, mailing address or bank account in this state. Colonial Press has never had any employees or agents based or residing in Rhode Island. Colonial Press has not advertised in Rhode Island or sold any products in Rhode Island

It is obvious that Colonial Press lacks the contacts with Rhode Island that are required to permit this Court to exercise general jurisdiction over Colonial Press.

**2. This Court May Not Exercise Specific Jurisdiction Over Colonial Press**

"Specific jurisdiction applies where the cause of action arises directly out of, or relates to, the defendant's forum-based contacts." Colibri, No. 03-523T, 2004 U.S. Dist. LEXIS 26711, at *14 (internal quotation marks and citations omitted). In evaluating

whether specific jurisdiction may be exercised, the First Circuit applies a three-part test: whether the claim underlying the litigation directly arises out of or relates to the defendant's forum contacts; whether those contacts represent a purposeful availment of the benefits and protections of the forum's laws; and whether the exercise of jurisdiction is reasonable. See Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284, 288 (1st Cir. 1999). In this case, no part of the test is satisfied.

Because Colonial Press has no in-state activities, the claim underlying this lawsuit cannot and does not arise out of or relate to such activities. The Complaint contains no allegations of any conduct by Colonial Press in Rhode Island. No contact between Colonial Press and Rhode Island was instrumental in forming the alleged agreement or was instrumental in the alleged breach of the agreement. In fact, Smith solicited Colonial Press in Nebraska. The alleged agreement was formed, and deficiently performed by Smith, without anyone from Colonial Press ever coming to Rhode Island. The services contemplated by the parties were all to be performed outside of Rhode Island.

Smith may argue that the existence of a contract is sufficient to satisfy the requirement of relatedness. However, "the mere existence of a contractual relationship between an out-of-state defendant and an in-state plaintiff does not suffice, in and of itself, to establish jurisdiction in the plaintiff's home state." Phillips Exeter, 196 F.3d at 290. Therefore, in this case, the claim does not arise out of or relate to the defendant's forum contacts.

Similarly, the required element of purposeful availment is not satisfied. This "requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another

party or a third person." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (internal quotation marks and citations omitted). "The kind of purposeful availment necessary in the First Circuit requires in-state conduct by the defendant which is both voluntary and which makes it reasonably foreseeable that the defendant might be sued in the forum." Colibri, No. 03-523T, 2004 U.S. Dist. LEXIS 26711, at *23. "[T]he voluntariness and foreseeability of the defendant's contacts depend on whether the defendant participated in the economic life of the forum and not just on the fact that the defendant formed a contract with the resident plaintiff." Id.

Here, there is no evidence that Colonial Press participated in any way in the economic life of this forum. Colonial Press did not solicit or otherwise reach out to Smith in connection with the services in dispute. Instead, Smith solicited Colonial Press. Colonial Press never came to Rhode Island, and none of the services which the parties contemplated were to be performed in Rhode Island. Accordingly, the voluntariness component of purposeful availment is not met.

Nor is the foreseeability component of purposeful availment met. Colonial Press did not intentionally direct activities to Rhode Island. Smith, not Colonial Press, initiated the transaction on which the Complaint is based, which involved the performance of services by Smith outside of Rhode Island. The core allegations of the Complaint relate to activities occurring outside of this forum. These circumstances did not give fair warning to Colonial Press that it would be subjected to the jurisdiction of courts in Rhode Island. Thus, Smith cannot meet its burden of proving that the element of purposeful availment is satisfied.

Finally, Smith must demonstrate that the exercise of personal jurisdiction over Colonial Press is reasonable. In other words, this Court may not exercise jurisdiction over Colonial Press if that exercise would offend notions of fair play and substantial justice. See Burger King, 471 U.S. at 476-77. In making this determination, the Court must consider the so-called "Gestalt" factors, namely the burden upon the defendant in defending the litigation, the interests of the forum in adjudicating the dispute, the interest of the plaintiff in obtaining convenient and effective relief, the interest of the interstate judicial system in resolving disputes efficiently, and the shared interest of the states in advancing social policies. Id. Each of these factors weighs in favor of dismissal.

The burden on Colonial Press in defending this lawsuit in Rhode Island is substantial. Colonial Press is incorporated and located in Nebraska. Colonial Press has never had any offices, employees or property in Rhode Island. It has never sold or transported products in or to, or performed any services in, Rhode Island. No employee or agent of Colonial Press has ever traveled to Rhode Island, and none of Colonial Press's customers are located in this state. Colonial Press simply has no presence in Rhode Island, and its witnesses and records, and the Harris press itself, are located in Nebraska. Requiring Colonial Press to defend this litigation in Rhode Island is extremely and unreasonably burdensome.

Moreover, Rhode Island has no significant interest in adjudicating the dispute. The Harris press was shipped from England to Nebraska. The services in issue were contemplated to be performed in Nebraska, and the services were deficiently performed in Nebraska. At best, this forum has a minimal interest in addressing Smith's claim.

In addition, although Smith may prefer to litigate in Rhode Island, where, as here, key witnesses are in Nebraska and none of the crucial events took place in Rhode Island, Smith's interest in obtaining relief can be served just as well by a Nebraska court as by a Rhode Island court. Because Smith routinely handles projects around the world, Smith will not be inconvenienced by pursuing its claim in Nebraska.

The common interest of Rhode Island and Nebraska in efficiently resolving disputes also warrants the dismissal of this case. Because witnesses, records, and the Harris press are located in Nebraska, it would be most efficient for this claim to be resolved there.

Finally, the shared interest of the states in furthering social policies warrants dismissal. "As a fundamental social policy, it is desirable that the court which is most concerned with a controversy . . . should adjudicate the dispute." Colibri, No. 03-523T, 2004 U.S. Dist. LEXIS 26711, at *33. Clearly, that court is not in Rhode Island.

The foregoing factors make plain that it is not reasonable to exercise jurisdiction over Colonial Press in this forum. The maintenance of the litigation in Rhode Island would offend traditional notions of fair play and substantial justice, and would be manifestly unreasonable.

In cases in which a defendant had significantly greater contacts with a forum than those present here, dismissal for lack of jurisdiction has been held to be proper. See, e.g., Phillips Exeter Acad. v. Howard Phillips Fund, Inc., 196 F.3d 284 (1st Cir. 1999) (affirming dismissal of breach of contract and other claims for lack of personal jurisdiction where defendants made visit to forum, transmitted checks to forum, and sent letters to forum); Hainey v. World Am Communications, Inc., 263 F. Supp.2d 338 (D.R.I.

2003) (dismissing claims for non-payment of services under consulting contract where plaintiff claimed two meetings occurred in Rhode Island and plaintiff had almost daily telephone contact with defendant for approximately one year); CVS Corp. v. Taubman Ctrs., Inc., 225 F. Supp.2d 120 (D.R.I. 2002) (dismissing breach of contract and other claims where defendant sent invoices and correspondence to plaintiff in Rhode Island and sent auditors to review records in Rhode Island). Dismissing this action against Colonial Press accords with, and is warranted by, these authorities.

## III. CONCLUSION

"The underlying goal of the jurisdictional inquiry is to permit a realistic appraisal of the propriety of subjecting defendants to suit in states where their presence is limited." CVS Corp., 225 F. Supp.2d at 128. In this case, which concerns services to install a press that was shipped from England to Nebraska, the Court may not properly exercise personal jurisdiction over Colonial Press.

Accordingly, Colonial Press respectfully requests that the Court grant its motion and dismiss the Complaint pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

**THE COLONIAL PRESS, INC.**
By its attorney,

Barbara S. Cohen

Barbara S. Cohen (#2848)
GOLDENBERG & MURI LLP
10 Weybosset Street
Providence, RI 02903
Tel: (401) 421-7300
Fax: (401) 421-7352

## IV. EXHIBITS

A. E.R. Smith Associates Inc., http://www.ersmith.com/company.htm (Feb. 28, 2005)

B. Affidavit of Thomas A. Visty in Support of Defendant's Motion to Dismiss for Lack of Personal Jurisdiction

## V. CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of March, 2005, a copy of the within Memorandum was forwarded by first class mail, postage prepaid, to:

George A. Comolli, Esq.
Comolli & LaMountain, Ltd.
15 Franklin Street
Westerly, RI 02891.

W. Mark Russo, Esq.
Christopher M. Mulhearn, Esq.
Ferrucci Russo P.C.
55 Pine Street
Providence, RI 02903

Jennifer Gagnon




Engineering | Machining | Inspection | Re-Manufacturing | Field Service | Company Information

**Company / History**

Founded in 1972 to meet printers' special equipment requirements, E. R. Smith Associates, Inc. (ERSA) has grown with its customers, earning and reinforcing its unmatched reputation for quality work and customer satisfaction. Today, ERSA has more than eighty employees located in a modern, forty-six thousand square foot facility in Westerly, Rhode Island.

ERSA routinely handles special engineering projects for web press manufacturers (OEMs) and printers around the world. Its engineers utilize the latest releases of AutoCAD, facilitating reverse engineering and innovative design projects from new, high-speed folders, to web press size changes, to special productivity enhancements for existing equipment.

Representative projects are listed on an attached sheet. AutoCAD permits rapid, easy communication with ERSA customers by E-mailing drawings (files) for consultation and approval before designs are released to manufacturing.

ERSA's manufacturing facility has been recently updated with the latest CNC machining and programming technologies. Three new CNC machining centers have been added in 1997. MasterCam software enables ERSA to translate AutoCAD drawings into machining codes reducing manufacturing cycle time and wasted materials.

ERSA's assembly team presently includes more than twenty-five people. Like many of the engineering and machinists, a number of these assemblers bring factory-trained experience to ERSA. The customer support team is drawn from the assembly group so pressroom requirements and problems are well understood on the ERSA assembly floor .

ERSA has built up and maintained unmatched facilities, equipment, and standards for quality. It is ERSA's innovative, reliable designs, uncompromised quality standards and pride of workmanship, which make ERSA "first in class" in terms of customer satisfaction. □



© 2003 E.R. Smith Associates / Web design by Mystic Net Marketing

DEFENDANT'S EXHIBIT A
Blumberg No. 5114

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

E.R. SMITH ASSOCIATES, INC.

Plaintiff,

v.

THE COLONIAL PRESS, INC.

Defendant.

Civil Action No. 05-CV-45-T

**AFFIDAVIT OF THOMAS A. VISTY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

I, Thomas A. Visty, being first duly sworn on oath, hereby depose and say:

1. I am an individual and a resident of Papillion, Nebraska.

2. I am the President of The Colonial Press, Inc. ("Colonial Press"), the defendant in this case, and I have served in this capacity, most recently, since 1998. I was first employed by Colonial Press from 1976 until 1993. I returned to Colonial Press in 1998 and have been continuously employed as the President of Colonial Press since that time.

3. I am authorized to make this affidavit on behalf of Colonial Press in support of its Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.

4. I make this affidavit in good faith and on the basis of personal knowledge of the facts set forth herein.

5. Colonial Press is a corporation duly organized and existing under the laws of Nebraska. Colonial Press was incorporated in the 1950's.

DEFENDANT'S EXHIBIT B

6. Colonial Press's principal place of business is located in La Vista, Nebraska, and has a mailing address in Omaha, Nebraska. Colonial Press also has an office in Lincoln, Nebraska.

7. Colonial Press is a commercial printer and lithographer. Among other things, Colonial Press handles heat set web printing, sheet-fed offset printing, high speed copying, and binding for businesses. Colonial Press prints newspapers inserts, business brochures, and other multi-color, high volume items for businesses.

8. Colonial Press does business in Nebraska and Colorado. Virtually all of Colonial Press's customers are located in Nebraska and Colorado. None of Colonial Press's customers are located in Rhode Island.

9. Colonial Press does not have a website.

10. On January 26, 2005, Colonial Press received a copy of the summons and complaint in this case at its office in La Vista, Nebraska.

11. As a result of having received the copy of the complaint, I caused a search to be made of the records of Colonial Press to determine whether Colonial Press has ever done business in Rhode Island or otherwise has had any contact with Rhode Island. I am fully familiar with the results of that search.

12. Colonial Press has never been incorporated in or licensed or qualified to do business in Rhode Island.

13. Colonial Press has never, at any time, appointed an agent for purposes of accepting service of process in Rhode Island.

14. Colonial Press has never conducted any business in Rhode Island.

15. Colonial Press has never owned, leased or possessed any interest whatsoever in any assets in Rhode Island, including real and personal property.

16. Colonial Press has never maintained an office in Rhode Island.

17. Colonial Press does not maintain and has never maintained a telephone listing, mailing address or bank account in Rhode Island.

18. At no time has Colonial Press ever had any employees or agents based in or residing in Rhode Island.

19. Colonial Press has never been a party to a contract which provides for the application of Rhode Island law.

20. Colonial Press has never engaged in any advertising in Rhode Island and has never engaged in any advertising calculated to reach Rhode Island.

21. Colonial Press has never sold any products in or transported any products in or to Rhode Island.

22. Colonial Press has never performed any services in Rhode Island.

23. Colonial Press has never, at any time, derived any revenue from the sale of goods or services, or from any other activity, in Rhode Island.

24. Colonial Press has never been required to pay, and has never paid, any taxes in Rhode Island.

25. In late 2003, Colonial Press was interested in purchasing certain printing equipment.

26. Colonial Press dealt with a used equipment broker located in California, Q.A.M, Inc. ("Q.A.M"), which was aware of a press that was available in New Jersey.

27. Q.A.M recommended E.R. Smith Associates, Inc., the plaintiff in this case, to Colonial Press to inspect the press in New Jersey.

28. The plaintiff inspected the press in October 2003 in New Jersey. Based on the results of the inspection, Colonial Press did not purchase the equipment.

29. Prior to this time, Colonial Press had never had any contact with the plaintiff.

30. In 2004, Colonial Press was considering the purchase of a press located in Texas.

31. However, in or about May 2004, the plaintiff solicited Colonial Press with respect to a Harris M-110B web offset press ("the Harris press") that was available for purchase in Leeds, England.

32. The plaintiff sent a letter, dated May 27, 2004, to Colonial Press, in Nebraska, regarding the Harris press.

33. Thereafter, on June 3, 2004, the plaintiff sent quotes to Colonial Press regarding the Harris press.

34. Approximately one week later, Bob Tucker, a representative of the plaintiff, and I viewed the Harris press in England. Because the building in which the press was located no longer had power, we were unable to operate the press.

35. I understood that the plaintiff had bought the Harris press and was looking to re-sell it.

36. Also, in June 2004, the plaintiff sent Colonial Press a quotation for services to be performed for the installation of the Harris press in Colonial Press's La Vista, Nebraska plant. Colonial Press agreed to purchase the Harris press and agreed to the quotation for installation services on the conditions that the installation be completed and the Harris press be fully

operational no later than September 2004, and that the same personnel who dismantled the Harris press in England reassemble the press in Nebraska.

37. Colonial Press required that the Harris press be fully operational in September 2004 in order to meet its own customers' deadlines for work to be performed by Colonial Press.

38. The plaintiff represented to Colonial Press, and assured Colonial Press, that the installation would be completed and the Harris press would be fully operational by the end of September 2004. The plaintiff also represented to Colonial Press, and assured Colonial Press, that the same personnel who dismantled the Harris press in England would reassemble it in Nebraska.

39. The Harris press was shipped from England to La Vista, Nebraska.

40. The plaintiff failed to perform the installation as promised. Although one or two representatives of the plaintiff came to Colonial Press's facility in Nebraska, the plaintiff sub-contracted the installation services to another company, Graphics & Industrial Technologies, Inc. ("GITI"), which is located in Gastonia, North Carolina. At times, over a period exceeding four and a half months, two to five employees of GITI attempted to install the Harris Press in Colonial Press's plant in Nebraska. Unfortunately, the installation efforts, in Nebraska, were deficient and untimely, and did not accord with the plaintiff's quotation. Moreover, to this date, the Harris press is not fully operational.

41. As a result of the plaintiff's deficient services, the plaintiff's President, Frank Andalaro, met with me in December 2004 at Colonial Press's plant in Nebraska. At that time, I presented Mr. Andalaro with an Invoice detailing the expenses, as of December 1, 2004, that Colonial Press would back-charge the plaintiff because of the plaintiff's failure to provide services as agreed.

42. After some discussions that took place over the course of a couple of days in Nebraska, the plaintiff and Colonial Press reached and signed an agreement, in Nebraska, resolving the plaintiff's claim for an additional payment and Colonial Press's claim respecting the back-charges.

43. Colonial Press received, in Nebraska, several telephone calls and faxes from the plaintiff and, in response, made one or two telephone calls to the plaintiff. However, none of the services contemplated to be performed or actually performed by the plaintiff were performed in Rhode Island. All of the meetings between the plaintiff and Colonial Press, except the meeting in England, took place in Nebraska.

44. No officer, employee or agent of Colonial Press has ever traveled to Rhode Island in connection with the activities alleged in the complaint or for any other reason.

45. Colonial Press has never purposefully engaged in activities in or directed towards Rhode Island.

46. Colonial Press has never contemplated that its actions would subject it to suit in any court in Rhode Island.

47. Colonial Press has never consented to the exercise of jurisdiction over it by any court in Rhode Island.

48. All of Colonial Press's witnesses and records respecting this matter, as well as the Harris press, are located in Nebraska. Other witnesses, for example, the employees of GITI who

came to Colonial Press's plant, are not located in Rhode Island. Only one or two representatives of the plaintiff ever viewed the Harris press or participated in the effort to install the Harris press.

Thomas A. Visty

STATE OF OMAHA
SARPY COUNTY

In La Vista, Nebraska, on the 18th day of February, 2005, before me personally appeared Thomas A. Visty, President of The Colonial Press, Inc., to me known and known by me to be the person executing the foregoing Affidavit, and he acknowledged said Affidavit by him executed to be his free act and deed and the free act and deed of said corporation.

GENERAL NOTARY - State of Nebraska
LINDA S. CLIFTON
My Comm. Exp. March 26, 2006

NOTARY PUBLIC

My Commission Expires: 3-26-2006